AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Kansas

FILED
U.S. District Court
District of Kansas

FEB 12 2015

Clerk, U.S. District Court
By _____ Deputy Clerk

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 15-M-__0027__-01-KMH
E-mail address derjo7@gmail.com, and/or Google, Inc. e-mail )
addresses associated with the name Joseph Andrew DeRusse or )
any version of that name, stored at premises controlled by )
Google, Inc. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ District of _____KANSAS_____ *(identify the person or describe property to be searched and give its location)*:

E-mail address derjo7@gmail.com, and/or Google, Inc. e-mail addresses associated with the name Joseph Andrew DeRusse or any version of that name, stored at premises controlled by Google, Inc.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B (Particular Things to be Seized).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __18__ U.S.C. § __1201(a)(1)__, and the application is based on these facts:

☑ Continued on the attached sheet. (see attached affidavit of probable cause)
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Rebecca L. Martin, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 12, 2015 @ 10:48 a.m.

_____
*Judge's signature*

City and state: Wichita, Kansas

Karen M. Humphreys, United States Magistrate Judge
*Printed name and title*

<u>AFFIDAVIT IN SUPPORT OF APPLICATION</u>

<u>FOR SEARCH WARRANT</u>

I, Rebecca L. Martin, Special Agent of the Federal Bureau of Investigation, being duly sworn, do hereby depose and state:

I. **Introduction**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Google, Inc., an email provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, Inc., to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2. I am employed as a Special Agent with the Federal Bureau of Investigation (FBI). I have been employed as a Special Agent since September 2, 1997. I am currently assigned to the Wichita, Kansas, Resident Agency, Kansas City Division. Prior to service with the FBI, I was a police officer for the City of Cincinnati, Ohio, for five and one-half years. As a Special Agent of the FBI, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest, search, and seizure warrants under the authority of the United States. I have participated in a wide variety of criminal investigations, to include white collar crimes, health care fraud, crimes against children, child exploitation, bank robbery, and other violent and non-violent Federal crimes. Additionally, I have participated in the preparation and/or execution of many search, arrests, and seizure warrants.

3. The information in this affidavit is information known to me as a result of my participation in this investigation or is information that has been communicated to me by other law enforcement investigators and witnesses, involved in this investigation. Since this affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only those facts that I believe are necessary to establish the existence of probable cause to support a search warrant.

4. As a result of my personal participation in this investigation, information received from other law enforcement officers and agents, information received from witnesses, and on the basis of other information that I have reviewed and determined to be accurate and reliable; I am familiar with the facts and offenses described in this affidavit. On the basis of this familiarity, I allege:

    (a) Joseph Andrew DeRusse (DeRusse), committed a violation of Title 18 USC §1201(a)(1) Kidnapping, that he unlawfully and willfully kidnap and held HMM, for the purpose of forcing HMM to marry him, and in committing or in

furtherance of the commission of the offense did willfully transport HMM in interstate commerce from Texas to Kansas.
   (b) Evidence of the above violation will be found with Google, Inc., an email provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043, in the items further described in Attachment A of this affidavit.

## II. Investigation

5. On Friday, January 23, 2015, at approximately 4:49 a.m., Newton, Kansas Police Department (NPD), K-9 Sergeant (Sgt) Jason Thompson, pulled over a black colored Nissan Sentra bearing Texas license plate BX6X527 at the above location. Sgt. Thompson had information from the Harvey County Communications (HCC) that the above vehicle was stolen and being tracked by GPS. The vehicle was registered to HMM and her father, LM of Hutto, Texas. Sgt. Thompson clarified the vehicle was not stolen, but the female owner was missing and possibly an endangered person.
6. Sgt. Thompson ordered the driver, who was identified as DeRusse to exit the vehicle. He was advised the vehicle had been reported as relating to a missing or endangered person. DeRusse said the vehicle was his fiancée's and she was in the vehicle. Sgt. Thompson approached HMM and she initially told him she was with DeRusse on her own free will. After Officer Wills of the Hesston, Kansas Police Department arrived at the scene as backup, HMM asked if she could talk to Sgt. Thompson in private. DeRusse was placed in Officer Wills' patrol vehicle. HMM said she was not with DeRusse willingly and that he had kidnapped her with a gun, then handcuffed and blindfolded her and was driving her to a secluded location somewhere in Kansas.
7. HMM had remained this way until Oklahoma City, Oklahoma, where they stopped and DeRusse removed the handcuffs and sleep mask, which was used as a blindfold. HMM said she thought about trying to escape at this point, but he was standing on the passenger side of the vehicle pumping fuel and she did not think she could get away. They continued driving on I-35 towards Kansas and when they got to the Kansas Turnpike toll booth he told her not to say a word. HMM said she feared for her life because of DeRusse's unpredictable actions.
8. After the above information, Sgt. Thompson re-contacted DeRusse and read him his Miranda Warnings and asked if he would be willing to talk to him without the presence of an attorney. DeRusse consented. DeRusse confirmed that he forced HMM to go with him by using a gun and handcuffed and blindfolded her.
9. HMM said she only learned 20 miles ago that the gun used by DeRusse was not real, but a BB gun. When Sgt. Thompson started to pull them over, DeRusse handed her the gun and told her to hide it. DeRusse later told Officer Wills that he contemplated getting out of the car with the gun and forcing Sgt. Thompson into shooting him because he did not want to live without HMM.
10. DeRusse and HMM were in a boyfriend/girlfriend relationship starting in September of 2014. While in the relationship, they communicated with each other via text messages and/or emails. DeRusse used his email address derjo7@gmail.com. They

had cooled things down in November of 2014 and finally broke up in December of 2014. They had not seen each other since December 26, 2014. HMM' sister, BD is married to DeRusse's brother, JD.

11. DeRusse had purchased a "pay as you go phone" to communicate with HMM in an undercover type capacity and identified himself as HMM's friend, Kaitlin. He also used this phone to communicate as Kaitlin to HMM's friend, SG. He told SG in a text message there was going to be a "surprise" for HMM at the apartment complex where BD and JD, resided, The Villas at Stone Oak Ranch, 10321 Legendary Drive, Austin, Texas on Thursday, January 22, 2015. HMM agreed to go with SG to find out about the "surprise". When DeRusse found out SG was with HMM, he told SG, as if he was Kaitlin, that SG was not wanted and the "surprise" was only for HMM. HMM believed this to be odd, and had decided not to go. She then changed her mind because she had made a promise to Kaitlin she would go by herself.

12. Upon arrival in BD and JD's apartment complex parking lot, DeRusse encountered HMM. He displayed the gun on her when she exited her vehicle and forced her back into the vehicle. He then handcuffed her and put a sleep mask on her eyes and made her wear a neck pillow to give the appearance she was asleep. All items were located in the above vehicle by law enforcement when it was stopped.

13. DeRusse said he was taking HMM to a Bed and Breakfast located in Narka, Kansas. He believed after spending three (3) weeks together, he would convince her to marry him. He had also purchased an engagement ring, which was also found in the vehicle. DeRusse had prepaid via PayPal three (3) weeks at the Bed and Breakfast. DeRusse used his email address, derjo7@gmail.com to communicate with the owners of the Bed and Breakfast. He also accessed the above email account on HMM's phone while in transit to Kansas from Texas.

14. On December 28, 2014, from 9:02 p.m. to 9:21 p.m., DeRusse sent HMM three (3) emails from derjo7@gmail.com. HMM had forwarded these to her father LM. The first at 9:02 p.m. stated in part:
    a. "It's clear you have no respect for me, and now that I went to the elders about you, you probably hate me. But you and I both know the truth, that what you said in there were blatant lies. I know you remember the things you said. I can never forget them. They haunt me every day. ……" "I lost everything H. Please honor me and make this right. Please talk to me."
    b. At 9:08 p.m. DeRusse wrote in part, "If you are really sorry, really repentant, you will automatically want to make things right with me. You will actually care. You could get disfellowshipped. Do you realize that? Then what? You're gone forever. H, I don't want that to happen."
    c. At 9:21 pm DeRusse wrote in part, "I know everything I say sounds like I'm trying to control. I'm not. I'm really trying to appeal to your heart H."

15. After LM reviewed the above emails and additional emails and texts of the same controlling nature, sent to HMM from DeRusse, LM became concerned for his daughter's safety. He believed DeRusse may do something irrational in order to see

HMM. LM owns a pest control business and installed GPS trackers on all of his business vehicles to keep track of his business fleet. He had an extra one and installed it on HMM' vehicle after reading the above emails and other emails and texts. The tracker device would allow LM to locate HMM's vehicle.

16. On January 23, 2015, at approximately 3:30 a.m., HMM' father, LM, realized she was not home. She had texted LM when she arrived at the apartment complex and normally texts when she comes home. When LM realized HMM was not home, he logged onto the GPS program and saw her vehicle had travelled from Texas, through Oklahoma, and was currently in Kansas. He notified Hutto, Texas Police Department to report HMM and her vehicle missing.

### III. Background on email providers

17. In my training and experience, I have learned that Google, Inc. provides a variety of on-line services, including email access, to the general public. Google, Inc. allows subscribers to obtain email accounts at the domain name gmail.com, like the email account listed in Attachment A. Subscribers obtain an account by registering with Google, Inc. During the registration process, Google, Inc. asks subscribers to provide basic personal information. Therefore, the computers of Google, Inc. are likely to contain stored electronic communications (including retrieved and unretrieved email for Google, Inc. subscribers) and information concerning subscribers and their use of Google, Inc. services, such as account access information, mail transaction information, and account application information.

18. In general, an email that is sent to a Google, Inc. subscriber is stored in the subscriber's "mail box" on Google, Inc. servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Google, Inc. servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Google, Inc.'s servers for a certain period of time.

19. When the subscriber sends an email, it is initiated at the user's computer, transferred via the Internet to Google, Inc.'s servers, and then transmitted to its end destination. Google, Inc. often saves a copy of the email sent. Unless the sender of the email specifically deletes the email from the Google, Inc. server, the email can remain on the system indefinitely. Even if the sender deletes the email, it may continue to be available on Google, Inc.'s servers for a certain period of time.

20. A sent or received email typically includes the content of the message, source and destination addresses, the date and time at which the email was sent, and the size and length of the email. If an email user writes a draft message but does not send it, that message may also be saved by Google, Inc. but may not include all of these categories of data.

21. A Google, Inc. subscriber can also store files, including emails, address books, contact or buddy lists, calendar data, pictures, and other files, on servers maintained and/or owned by Google, Inc.

22. Subscribers to Google, Inc. might not store on their home computers copies of the emails stored in their Google, Inc. account. This is particularly true when they access their Google, Inc. account through the web, or if they do not wish to maintain particular emails or files in their residence.

23. In general, email providers like Google, Inc. ask each of their subscribers to provide certain personal identifying information when registering for an email account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

24. Email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google, Inc.'s website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

25. In some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

26. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

27. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

**CONCLUSION**

28. Based upon the aforementioned, I have probable cause to believe that Joseph Andrew DeRusse (DeRusse), committed a violation of Title 18 USC §1201(a)(1) Kidnapping, that he unlawfully and willfully kidnap and held HMM, for the purpose of forcing HMM to marry him, and in committing or in furtherance of the commission of the offense did willfully transport HMM in interstate commerce from Texas to Kansas.

29. Evidence of the above violation will be found with Google, Inc., an email provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043, in the items further described in Attachment A of this affidavit.

30. Based on the forgoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).] Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Rebecca L. Martin Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me in my presence on this 12th day of February, 2015.

Karen M. Humphreys
United States Magistrate

## ATTACHMENT A
### Property to Be Searched

This warrant applies to information associated with the following email address:

derjo7@gmail.com, and/or

Google, Inc. email addresses associated with the name Joseph Andrew DeRusse or any version of that name,

that are stored at premises owned, maintained, controlled, or operated by Google, Inc., a company headquartered at Google, Inc., headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

**ATTACHMENT B**
**Particular Things to be Seized**

**I.     Information to be disclosed by Google, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, Inc., including any emails, records, files, logs, or information that have been deleted but are still available to Google, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google, Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.     The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.     All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

d.     All records pertaining to communications between Google, Inc. and any person regarding the account, including contacts with support services and records of actions taken.

**II.    Information to be seized by the government**

a.     All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18 USC §1201(a)(1), Kidnapping, involving Joseph Andrew DeRusse, including, for the email account or identifier listed on Attachment A, information pertaining to the following matters: Joseph Andrew DeRusse has committed a violations of Title 18 USC §1201(a)(1), Kidnapping.

b.   Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.